**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
        v.                          )
                                    )   Criminal Action No. 05-100 (RWR)
**ANTWUAN BALL, et al.,**           )
                                    )
        Defendants.                 )
_____ )

## MEMORANDUM OPINION AND ORDER

Defendants Antwuan Ball, Desmond Thurston, and Joseph Jones were convicted of distribution of cocaine base ("crack") and are currently appealing their sentences in the court of appeals. The defendants moved for release pending their appeal. Because the defendants have not met their burden to show that they pose no flight risk or danger to the community during release or that their appeal raises a substantial question likely to result in a reversal, the defendants' motion will be denied.

## BACKGROUND

Eighteen people were indicted for a multitude of narcotics offenses and crimes of violence committed in the Congress Park area. Ball, the alleged leader, Thurston, and Jones were among the eighteen. Eight[1] pled guilty to conspiring for thirteen years with Ball, Thurston, and Jones, to engage in narcotics

---

[1] Gerald Bailey, Jasmine Bell, Raymond Bell, Lucious Fowler, Arthur Handon, Marcus Smith, Phillip Wallace, Daniel Collins.

racketeering. One[2] was tried separately and convicted of, among other charges, engaging in a thirteen-year narcotics conspiracy with Ball, Thurston, and Jones; another[3] pled guilty to engaging in a lengthy narcotics conspiracy with Ball and Thurston. Yet another[4] pled guilty to manslaughter while armed.

Ball, Thurston, and Jones were tried together with others and convicted of multiple crack sales, but acquitted of conspiracy. Each defendant's sentencing guidelines range, though, was calculated using as relevant conduct evidence of the 1.5 kilograms of crack cocaine involved in the conspiracy. Ball was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) of one count of distribution of 11.6 grams of crack cocaine. His guidelines range was 292 to 365 months imprisonment. He was sentenced to 225 months in prison and 60 months of supervised release. Thurston was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(C) of two counts of unlawful distribution of a total of approximately 1.7 grams of crack cocaine. His guidelines range was 262 to 327 months imprisonment. He was sentenced to 194 months in prison and 36 months of supervised release on each count to be served concurrently. Jones was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(C) of two counts of unlawful

---

[2] Newett Ford.

[3] Burke Johnson.

[4] Dominic Samuels.

distribution of a total of approximately 1.8 grams of crack cocaine. His guidelines range was 324 to 405 months imprisonment. He was sentenced to 180 months in prison and 72 months of supervised release on each count to be served concurrently. The defendants are currently appealing their sentences in the court of appeals.

The defendants move for release pending their appeal arguing that they are not flight risks and do not pose a danger to the community, and that their appeals raise substantial questions of law which likely will result in reversal. The government opposes, arguing that none of the requirements for release pending appeal has been met.

## DISCUSSION

The Bail Reform Act provides that

> "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" shall be detained unless the court finds "that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal."

United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1988) (per curiam) (quoting 18 U.S.C. § 3143(b)). Generally, a judicial officer must detain any person found guilty of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" 18 U.S.C. §§ 3142(f)(1)(C), 3143(b)(2). However, a person subject

to detention under § 3143(b)(2) "who meets the conditions of release . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Here, it is undisputed that the defendants were convicted of offenses that trigger the mandatory detention provision. See Defs.' Mem. of P. & A. Supporting Defs.' Mot. for Release ("Defs.' Mem.") at 5; Govt.'s Opp'n to Defs.' Mot. for Release at 5. Thus, § 3143 would normally bar release for these defendants. To qualify for release pending appeal, then, the defendants must show that the statutory requirements of 18 U.S.C. § 3143(b) are met and that there are "exceptional reasons" for release.[5] See United States v. Jones, 800 F. Supp. 2d 90, 93 (D.D.C. 2011).

I. FLIGHT RISK AND DANGER TO THE COMMUNITY

For the defendants to qualify for release under the Bail Reform Act, the court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)[.]" 18 U.S.C. § 3143(b). Under § 3142, the court is required to consider

---

[5] Because the defendants have failed to show that the requirements of § 3143(b) have been met, it is unnecessary to determine whether the defendants have provided provide sufficient "exceptional reasons" for release to satisfy 18 U.S.C. § 3145(c).

> (1) the nature and circumstances of the offense . . . ;
> (2) the weight of evidence against the person;
> (3) the history and characteristics of the person, including --
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). The D.C. Circuit has recognized that "society is endangered when courts release those individuals onto the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." United States v. Anderson, 670 F.2d 328, 330 (D.C. Cir. 1982) (per curiam). In particular, the Anderson court found that a defendant's repeated drug possession offenses and involvement in narcotics distribution sufficed to show that the defendant was "a substantial danger to any community." Id. Further, a defendant's previous arrests can also be accorded "some weight in determining whether appellant is likely to be danger to the community if released pending appeal." Russell v. United States, 402 F.2d 185, 186 (D.C. Cir. 1968) (citing Rhodes v. United States, 275 F.2d 78, 82 (4th Cir. 1960)).

The defendants assert that they are not flight risks because they grew up in the Washington, D.C. area, their families are located here, and they lack the financial resources to flee the jurisdiction if they are released. Defs.' Mem. at 12-13. In addition, the defendants state that they did not flee the jurisdiction during the investigation of their crimes despite public knowledge of the investigation. Id. The defendants also assert that Thurston has attempted to change his lifestyle, that Jones was employed before his indictment, that Ball has an employment offer, and, thus, the defendants no longer present a danger to the community. Id. at 13-14.

These assertions are insufficient to satisfy the defendants' burden to show by clear and convincing evidence that they are not flight risks or a danger to the community. Even assuming the truth of the defendants' statements about their family ties, employment opportunities, and limited financial resources, those considerations pale in comparison to the seriousness of their present convictions and lengthy criminal histories of convictions and arrests. In particular, Ball's criminal history includes a firearm possession conviction and fifteen other adult arrests for several offenses including possession with intent to distribute cocaine, possession of marijuana, firearm possession, aggravated assault while armed, and first degree murder. See Ball Presentence Investigation Report ¶¶ 100, 106-20. Thurston's

criminal history reflects four other adult convictions for theft, assault, and cocaine and marijuana possession and eleven other adult arrests for offenses including unlawful entry, cocaine distribution, assault and aggravated assault while armed, robbery, firearm offenses, and escape and fugitive offenses. See Thurston Presentence Investigation Report ¶¶ 81-85, 95-105.  As an adult, Jones has been convicted seven other times for offenses including attempted assault with a dangerous weapon, attempted cocaine distribution, marijuana and cocaine possession, and driving under the influence.  He incurred twelve other adult arrests on charges including armed robbery, carrying a dangerous weapon, marijuana possession and distribution, assault with the intent to kill, firearm possession during a violent offense, assault with a dangerous weapon, carrying a concealed deadly weapon, cocaine possession, and assault.  Jones Presentence Investigation Report ¶¶ 66-72, 80-91.  Each of these defendants' sentences was based in part on the defendants' involvement in a long-term conspiracy to distribute large quantities of crack cocaine and the defendants actions to violently protect and further the conspiracy.  The defendants' willing participation in the ongoing distribution of dangerous narcotics and the violence attending it make them no candidates for release.  Their criminal histories corroborate that the defendants remain a danger to the community.  Thus, the defendants' motion for release does not

show by clear and convincing evidence that the defendants are not likely to flee or pose a danger to the community.

II. SUBSTANTIAL QUESTION OF FACT OR LAW ON APPEAL

Wholly aside from the defendants' failure to satisfy their burden on the first issue, their appeal does not raise "a substantial question of law or fact." A "substantial question of law or fact" in § 3143(b) is "a close question or one that very well could be decided the other way." Perholtz, 836 F.2d at 555 (internal quotation marks omitted). To determine whether a defendant has met the Perholtz standard, courts have also considered precedent in other circuits in addressing whether there is a consensus of authority on a legal issue. See United States v. Alston, Criminal Action No. 02-57 (JDB), 2006 WL 1518952, at *2-3 (D.D.C. May 30, 2006); United States v. Hubbard, Criminal Action No. 94-128 (LFO), 1995 WL 13266, at *2 (D.D.C. Jan. 5, 1995). "Defendant bears the burden of showing that a 'substantial' question exists." United States v. Keleta, 534 F. Supp. 2d 106, 107 (D.D.C. 2008) (citing United States v. Libby, 498 F. Supp. 2d 1, 3 (D.D.C. 2007)).

The defendants argue that there is a substantial question of law about whether sentences based on acquitted conduct violate the Fifth and Sixth Amendments. However, the D.C. Circuit has directly addressed the defendants' claim by stating that

> the District Court's reliance on acquitted conduct in
> calculating the Guidelines range no longer poses a

>problem because the post-Booker Guidelines are only advisory. For Sixth Amendment purposes, the relevant upper sentencing limit established by the jury's finding of guilt is thus the *statutory* maximum, not the advisory Guidelines maximum corresponding to the base offense level. And the Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." United States v. Booker, 543 U.S. 220, 233 (2005). In short, because the [acquitted conduct] was proved by a preponderance of the evidence and because [the defendant's] sentence did not exceed the statutory maximum of 10 years, the District Court's consideration of acquitted conduct in sentencing him did not violate the Fifth or Sixth Amendment.

United States v. Settles, 530 F.3d 920, 923 (D.C. Cir. 2008); see also United States v. Brown, 516 F.3d 1047, 1050-51 (D.C. Cir. 2008) (holding that the district court did not err in imposing upward adjustments based on acquitted conduct because the court did not impose a sentence that exceeded the statutory maximum). The Settles court noted that judges and commentators have argued against the use of acquitted conduct in sentencing, "[b]ut under binding precedent, the Constitution does not prohibit a sentencing court from relying on acquitted conduct." Id. at 924. Thus, where a sentence is below the statutory maximum and any acquitted conduct was proven by a preponderance of the evidence, the sentencing does not violate the Fifth or Sixth Amendment.

Here, there is no circuit split as to whether district courts may use acquitted conduct in sentencing. The circuit courts that have addressed this issue have held that the use of acquitted conduct in sentencing is constitutional. See United

States v. Waltower, 643 F.3d 572, 577 (7th Cir. 2011) (citations omitted) (citing cases from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and D.C. Circuits and stating that "[e]very circuit to have considered the question post-Booker, including ours, has held that acquitted conduct may be used in calculating a guidelines sentence, so long as proved by a preponderance standard").

The defendants argue that Settles' interpretation of Supreme Court precedent is incorrect and that the principle that a defendant's sentence may not be increased based on a fact not found by the jury beyond a reasonable doubt applies to the Guidelines. Thus, the defendants argue that the upper limit of the judge's sentencing discretion is the top of the sentencing guideline range for the convicted offense and any increase above that range based on facts not found by the jury is unconstitutional. See Defs.' Mem. at 8-10; Defs.' Reply to Govt.'s Opp'n to Mot. for Release ("Defs.' Reply") at 7. To support their argument, the defendants cite United States v. Booker, 543 U.S. 220 (2005). There, the Supreme Court held in part that the Sixth Amendment applies to the mandatory Sentencing Guidelines. Id. at 233. However, the basis for applying the Sixth Amendment to the Sentencing Guidelines was that

> the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges. If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than

>     required, the selection of particular sentences in
>     response to differing sets of facts, their use would
>     not implicate the Sixth Amendment.

Id. In the remedial portion of the Booker opinion, the Supreme Court held that the Guidelines were no longer mandatory, but instead advisory. Id. at 245-46. The defendants were sentenced when the Guidelines were advisory. Thus, the Sixth Amendment's protection against the use of non-jury found facts is not implicated by the use of acquitted conduct in sentencing these defendants because they were sentenced under the advisory Guidelines.

The defendants also cite the Supreme Court's decision in Southern Union Company v. United States, 132 S. Ct. 2344 (2012) to argue that "the material facts used to establish the defendant's so-called Relevant Conduct cannot be enhanced by a court beyond those found by the jury or admitted by the defense." Defs.' Reply at 7. However, the Southern Union case does not undermine Settles' holding that using acquitted conduct in sentencing is permissible where the judge finds the facts by a preponderance of the evidence and the sentence does not exceed the statutory maximum. Instead, the Southern Union case held that the imposition of criminal fines is subject to the Apprendi rule -- "[t]he Sixth Amendment reserves to juries the determination of any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum

potential sentence." Southern Union, 132 S. Ct. at 2348 (citing Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004)). Southern Union merely recited the Apprendi rule, explained the basis for the rule, and applied the rule to criminal fines without disturbing the legal standards for using acquitted conduct in sentencing or stating that the advisory Guidelines implicated the Apprendi rule when a defendant's sentence is increased within the statutory maximum. See id. at 2350-57. Thus, Booker and Southern Union do not reflect that Settles' holding regarding acquitted conduct is inconsistent with Supreme Court precedent.

The defendants also argue that their sentences violate the Sixth Amendment because the sentences are substantively unreasonable. The substantive reasonableness inquiry requires the appellate court to consider, under an abuse of discretion standard, "the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). The essential inquiry for substantive reasonableness is: "[i]n light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?" United States v. Gardellini, 545 F.3d 1089, 1093 (D.C. Cir. 2008). The Gardellini court also stated that

> appellate courts may not reverse a district court simply because the Sentencing Commission, a reviewing appellate court, or another district court "might reasonably have concluded that a different sentence was appropriate." Gall, 128 S. Ct. at 597. . . . District judges now have far more substantive discretion in sentencing than they had pre-Booker. Therefore, whether the defendant receives a sentence within, above, or below the Guidelines range, both the Government and defense counsel would be well-advised to understand that it will be an unusual case where an appeals court overturns a sentence as substantively unreasonable -- as the post-Rita, post-Gall case law in the courts of appeals shows.

Id. at 1096. The D.C. Circuit "afford[s] a presumption of substantive reasonableness to within-Guidelines sentences . . . [and] this Court has not as yet reversed any within-Guidelines sentence as substantively unreasonable." United States v. Harrison, 356 Fed. App'x 423, 425 (D.C. Cir. 2009) (citations omitted). The Harrison court also reaffirmed that "a sentence may be based on facts determined by the sentencing judge by a preponderance of the evidence, as long as the sentence is not greater than the statutory maximum." Id. (citations omitted).

Here, the defendants argue that the sentences are substantively unreasonable because "the norm for the offense of conviction is far less than the sentences handed out." Defs.' Mem. at 11; Defs.' Reply at 2. Defendants rely on Justice Scalia's concurrence in Rita v. United States, 551 U.S. 338, 368-75 (2007). Rita held that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines."

Rita, 551 U.S. at 347. There, Justice Scalia recognized that "there will inevitably be *some* constitutional violations under a system of substantive reasonableness review, because there will be some sentences that will be upheld as reasonable only because of the existence of judge-found facts." Id. at 374 (Scalia, J., concurring). These include sentences within the Guidelines range which were "substantially enhanced by certain judge-found facts." Id. at 371 (Scalia, J., concurring). Thus, Justice Scalia notes that the Rita majority opinion "does not rule out as-applied Sixth Amendment challenges to sentences that would not have been upheld as reasonable on the facts encompassed by the jury verdict or guilty plea." Id. at 375 (Scalia, J., concurring). In essence, the defendants argue that the consideration of acquitted conduct increased the sentences too much by adjusting the offense level based on the amount of cocaine base involved in the drug conspiracy -- 1.5 kilograms -- rather than the amount of cocaine base that the defendants were convicted of distributing. Although Justice Scalia's concurrence provides some basis for the defendants' argument, it is clear that the upper limit of the sentencing court's discretion is the statutory maximum and that binding precedent allows the use of acquitted conduct to increase the defendants' sentences up to that level. See Settles, 530 F.3d at 923; Brown, 516 F.3d at 1050.

The statutory maximum for Ball was 40 years, the statutory maximum for Thurston was 20 years per count, and the statutory maximum for Jones was 30 years per count.  Ball's guidelines range was 292 to 365 months imprisonment, Thurston's guidelines range was 262 to 327 months imprisonment, and Jones guidelines range was 324 to 405 months imprisonment.  All of the defendants' sentences were substantially below both the statutory maximum and the guidelines range: Ball was sentenced to 225 months, Thurston was sentenced to 194 months, and Jones was sentenced to 180 months.  The defendants have not cited any binding precedent which reflects that imposing sentences below the statutory maxima and below the guidelines ranges calculated using acquitted conduct establishes that the defendants' sentences are substantively unreasonable.  Thus, the defendants' motion for release does not raise a substantial question of law on the substantive reasonableness of the defendants' sentences.

The defendants also argue that their sentences are procedurally unreasonable because the government witnesses who testified to the existence of a narcotics conspiracy were untrustworthy and unreliable.  In reviewing the procedural reasonableness of a sentence, the appellate court must

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately

      explain the chosen sentence -- including an explanation
      for any deviation from the Guidelines range.

Gall, 552 U.S. at 51.  Here, the defendants argue that the district court based its findings on "clearly erroneous facts" by failing to address and give specific reasons why it rejected the defendants' claims that the witnesses were not trustworthy because they were cooperating witnesses.  Defs.' Mem. at 10-12; Defs.' Reply at 14-15.  The defendants also argue that the record reflects that there were multiple conspiracies rather than a single conspiracy.  Defs.' Mem. at 11.  Factors to consider in determining whether there was a single conspiracy are "whether the conspirators share a common goal, such as the possession and distribution of narcotics for profit[,] . . . the degree of dependence inherent in the conspiracy . . . [and] the overlap of participants in the various operations claimed to comprise a single conspiracy."  United States v. Tarantino, 846 F.2d 1384, 1393 (D.C. Cir. 1988) (citations omitted).

    The record at the sentencings included the trial evidence and the factual proffers from the plea agreements of the other co-defendants who admitted participation in the narcotics conspiracy.  The presentence investigation reports based the conspiracy finding on the testimony of numerous individuals including cooperating witnesses and police officers who described the nature and duration of the narcotics conspiracy.  See Ball Presentence Investigation Report ¶¶ 16-84; Thurston Presentence

Investigation Report ¶¶ 17-62; Jones Presentence Investigation Report ¶¶ 18-49.

At Jones' sentencing, the court noted that the offense level was calculated based in part on activity which other co-defendants admitted to in guilty plea proffers and that co-defendant Newett Ford was convicted of conspiracy by a jury. Jones Sent., May 1, 2008 Tr. 20:7-17. The court described the direct and circumstantial evidence which showed by a preponderance of the evidence that the defendant was involved in a narcotics conspiracy. Id. at 20:18-23:8. The court specifically found that the defendant knew the other conspirators and that the defendant and co-conspirators were selling crack cocaine together in the Congress Park area. Id. at 20:7-23:8.

Similarly, at Thurston's sentencing, the court explained that its conspiracy finding was based on trial witness testimony and evidence showing Thurston's association with the other co-conspirators and involvement in selling crack cocaine. Thurston Sent., Oct. 29, 2010 Tr. 18:19-19:8. The court then reviewed the witness testimony and explained why the testimony was credible despite the defendant's cross-examination and credibility challenges. Id. at 19:9-20:16. The court also cited Joe Langley's and Burke Johnson's guilty plea proffers and those of seven other co-defendants who pled guilty without cooperation

agreements which supported the conspiracy finding.  <u>Id.</u> at 21:10-22:8.

Finally, at Ball's sentencing, the court stated that the conspiracy finding rested on evidence which established that Ball knew and was seen with the other co-conspirators in the Congress Park area based on the testimony of numerous witnesses who explained Ball's direct involvement in the conspiracy.  Ball Sent., Mar. 17, 2011 Tr. 31:2-34:7.  The court specifically addressed the defendants' arguments about witness credibility by explaining why witnesses were credible and finding that "[i]n any event, given -- full effect to this impeachment does not undermine the mutually corroborative evidence, which I have identified and credited that demonstrates concerted activity and the volume of crack involved in the relevant conduct."  <u>Id.</u> at 34:8-35:6.  Further, the court based the conclusion about the relevant conduct quantity and the conspiracy finding in part on the sworn guilty plea proffers.  "Joe Langley, Burke Johnson, and Mary McClendon each pled guilty under oath to conspiring to distribute crack for at least a decade, . . . and they named in signed proffers numerous named conspirators in this case as customers."  <u>Id.</u> at 36:5-11.  In addition, other co-defendants, including co-defendants without cooperation agreements "pled guilty under oath to conspiring for many years with Mr. Ball and

other named conspirators in this case to distribute crack." Id. at 36:16-18.

Here, the conspiracy finding was supported by witnesses from the drug market at the time and the court described in detail the evidence upon which the conspiracy finding rested and addressed the credibility concerns raised by the defendants at that time. By simply re-raising the overruled objection about witness credibility, the defendants have not satisfied their burden of showing how the sentences were based on "clearly erroneous facts" or how the court failed to adequately explain its findings. The findings at sentencing also support the presence of a single conspiracy because the distribution of narcotics for profit was the common goal and the witness testimony and evidence reflected both a level of dependence and an overlap of participants in the conspiracy. Thus, the defendants' procedural unreasonableness challenge also does not raise a substantial question of law and release pending appeal is unwarranted.[6]

## CONCLUSION AND ORDER

The defendants have not shown by clear and convincing evidence that they do not pose a risk of flight or danger to the

---

[6] The defendants also assert that "there is a substantial question of law as to whether the extended delay in sentencing Thurston and Ball, and by extension, Jones, . . . was unconstitutional." Defs.' Mot. for Release at 1. However, the defendants do not discuss this issue further in their motion or reply brief. The burden rests on the defendants, and they have not carried it on this claim.

community.  Binding precedent in this circuit supports the use of acquitted conduct in calculating the defendants' total offense levels under the Sentencing Guidelines and there is no circuit split on this issue.  No other binding precedent reflects that imposing sentences below the statutory maxima and below the Guidelines range calculated using acquitted conduct establishes that the defendants' sentences are substantively unreasonable.  The defendants have also not shown that their sentences were procedurally unreasonable.  Accordingly, it is hereby

ORDERED that the defendants' motion [1478] for release be, and hereby is, DENIED.

SIGNED this 23rd day of August, 2013.

                                                  _____/s/_____
                                                  RICHARD W. ROBERTS
                                                  Chief Judge